UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Crim. No. 04-10151-GAO |
| | ) | |
| JOSEPH FILIPE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE**

The defendant moves that the Court grant a downward departure to Level 8 and Criminal History Category I for the reasons hereinafter stated.

**Total Offense Level**

The defendant stands convicted of his plea of guilty to one count of perjury under 18 USC §1623 and one count of obstruction of justice under 18 USC §1503, both counts charging the same criminal act: falsely denying the making of extortionate payments of money to one Timothy Mello, a man known to the defendant, and widely publicized by the government, as having an extraordinarily vicious disposition.

At the Rule 11 hearing, of March 2, 2005, the defendant offered a plea of guilty, but only to so much of the indictment that charges the commission of perjury and obstruction of justice before a grand jury conducting an investigation into a violation of 18 USC §1951, proscribing the offense of extortion.  With the clear understanding that the limited plea was designed to effect a reduction in the guideline offense level, the government announced its assent to the Court's acceptance of the plea.  The Court thereupon indicated its understanding of the defendant's purpose and accepted the plea.

Accordingly, if this clear understanding is to be implemented, the applicable guideline will be drawn from USSG §2B3.2. That section provides a base offense level of 18, plus a 2-level increase for threat of bodily injury, less a 6-level reduction under USSG §2X3.1 and a further 2-level reduction for acceptance of responsibility, producing a total offense level of 12.

Two prior convictions, both misdemeanors, one for assault and battery and one for simple assault, move the defendant into Criminal History Category II.

Absent a downward departure, at Total Offense Level 12 and Criminal History Category II, the defendant would be subject to a sentencing range of 12 to 18 months.[1]

**Grounds for Downward Departure**

1. <u>Duress</u>

Mr. Filipe was the night-shift manager, as well as general manager, of a nightclub in Dartmouth, Massachusetts, that featured nude dancing. As such, it attracted a less than desirable, often unruly clientele. This, in turn, left it vulnerable to criminals disposed to extortion.

Timothy Mello was well known by most in southeastern Massachusetts as the head of an organization that controlled criminal activity throughout the area. Known as "The Bat" for the baseball equipment that he favored to bend his victims to his will, he was widely feared as a pitiless madman and one who was not to be crossed. For those who did not know him, the

---

[1] The Probation Office, in its response to defendant's Objection #2, sweeps into its guideline calculation facts that have been neither found by a jury nor admitted by the defendant. Defendant has admitted only that the grand jury before which he appeared was investigating an extortion. If a citation to authority is needed to support the defendant's position that his narrowly limited admission controls his guideline calculation, then the defendant respectfully offers <u>United States v. Booker</u>, 125 S.Ct. 738 (2005).

government, in its highly advertised prosecution of Mello, publicly confirmed his well earned reputation.

Sometime in the year 1994, the attention of the Town was drawn to the increasing frequency of the nightclub's calls to the police for assistance in dealing with unruly patrons. As a result, the town authorities issued a warning to the club that its license would be revoked if it continued to overburden police resources in this way. Thereupon entered Mr. Mello, with an offer that could not be refused: Upon payment of a monthly tribute, the violence would end. The defendant accepted, and while the payments continued, the violence, except for random incidents, was indeed reduced.

In 1999, Filipe began to think better of the bargain and told Mello that the payments would cease; whereupon the enraged Mello threw a television set at Filipe. What had been before a plausibly prudent business arrangement now became pure extortion. Filipe resumed the payments, but only for three or four more months, when news of the federal investigation finally moved Mello to back away.

When the defendant appeared before the grand jury on June 27, 2002, although mindful of his own safety, he was far more concerned for the security of his young family. He was convinced that his family was as much at risk as himself if he should betray Mello. At the time, he had at home a daughter, age six months, and two sons, age two years and five years, respectively. Also dependent on him were his sixteen-year old stepdaughter and the thirteen-year old niece of his wife, both of whom has been a part of the family from their very early childhood.

Adding to the weight of this burden was the realization that, should any harm come to him, his wife, a victim of substance abuse and beset by serious emotional issues, would surely further traumatize the children by abandoning them. And thus the decision to falsely deny the extortion before the grand jury.

Then, on January 2, 2004, the victim of the extortion morphed to a new status, as a grand jury target. Under the government's guidance, Mello, who had become a cooperating witness, lured Filipe to his home, where Filipe was electronically recorded assuring Mello that he had denied the extortion.

Under the First Circuit's interpretation of USSG § 5K2.12, duress not amounting to a complete defense may be the basis for a downward departure where it involves a serious threat, explicit or implicit, of physical injury, if the alleged threat is actually intended and the defendant reasonably believes the threat to be real. In these circumstances, departures are encouraged. *United States v. Sachdev*, 279 F.3d 25, 29 (2002). Here the defendant, with no time to think about the consequences, gave false testimony to protect a man widely known, and publicly advertised by the government, to have the means and the will to cause serious physical injury to those who betray him, as well as to the close family of his betrayers. It would indeed be surprising if the government were now to assert that the threat was not real. Therefore, fully expecting the government to concede the point, the defendant submits that the circumstances clearly warrant the exercise of this Court's discretion to depart downward.

2.   Family Circumstances

Family ties and responsibilities are not ordinarily relevant under USSG §5H1.6 in considering a request for departure. This case, however, is one that presents special

4

circumstances. The family, consisting of three very young children and two teenagers, have been abandoned by their mother, who now lives in Rhode Island with her boyfriend (PSR, ¶64). The eight-year old, Joseph, has been so traumatized by her departure that he now requires weekly therapy. Although the defendant's sister and mother are prepared to assume the guardianship of the children in his absence, they would not have the financial means to maintain the family home. It is the defendant who alone is the emotional caretaker and financial support of the home. If he were now to be removed, and both parents were to be absent, the family would lose their home and suffer harm, emotional as well as financial, that "substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant." USSG § 5H1.6, Application Note B(ii).

3.   Physical Infirmity

An extraordinary physical impairment may be a reason to depart downward under USSG 5H1.4. As summarized in the Presentence Report, at paragraphs (74) through (78), Mr. Filipe has one non-functioning kidney and one that is slowly losing function. Eventually, he will be on dialysis. He has high blood pressure, has had two mild heart attacks and suffers from migraine headaches.

His kidney condition requires that he maintain a low salt and protein diet. In addition, he is required to take daily doses of Hyzaar (a diuretic for treating his kidney dysfunction and high blood pressure), Atenolol (to slow his heart beat), Prevacid (an antacid, without which he cannot take any food) and Fioricet (for his headaches). His headaches, when they strike, are so severe as to disorient him and force him literally to his knees. Any departure from his diet is immediately followed by malaise and dizziness.

United States v. Rioux, 97 F.3d 648 (2nd Cir. 1996), involved a similar medical condition. The defendant in that case had one kidney, which was a twenty-year old transplant. Although functioning, the new kidney was diseased. Consequently, the defendant was required to receive regular blood tests and prescription medicines. The defendant also had a hip replacement, which required monitoring. The Second Circuit held that the Connecticut District Court did not abuse its discretion in granting the defendant a ten-level reduction, from twenty to ten, on the basis of his medical condition in combination with his charitable and civic good deeds. Id. at 663.

4.   Criminal History

Mr. Filipe's position as night manager, as well as general manager, of a nightclub featuring nude dancing requires that he deal almost on a daily basis with rowdy and belligerent patrons. The situation often calls for eviction from the premises. When physical force is required, criminal prosecution is not an uncommon result. Sometimes, but only once in the case of Mr. Filipe, the club's employees are found by the court to have used excessive force. That one instance, in Mr. Filipe's case, resulted in a conviction for assault and battery, described in the Presentence Report at Paragraph (47).

A second conviction, for simple assault, described at Paragraph (48), resulted from Mr. Filipe's well-intentioned, but ill-considered, effort to force the woman who would later become his wife to leave her parents home in Rhode Island and return to the couple's home and the two children then in their custody in Massachusetts. The incident occurred during one of Mrs. Filipe's periods of substance abuse.

Both these offenses are misdemeanors, committed, one six years and, the other, seven years, before the date of the instant offense. All other evidence of prior, but unconvicted,

6

criminal behavior (PSR, ¶s (51), (54), (55) and (56)) either predates the two convicted offenses or involves proceedings in Massachusetts that are related to the already counted simple domestic assault in Rhode Island. Thus the case falls squarely within the example given at USSG §4A1.3, Application Note 3, suggesting a downward departure where there are "two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period".

## Conclusion

If not for any one or more of the foregoing reasons, then in consideration of the totality of the circumstances, *United States v. Sklar*, 920 F.2d 107, 117 (1st Cir. 1990), the Court should grant a downward departure to a level that will permit a sentence of probation.

By his attorney,

June 3, 2005

/s/ Francis J. DiMento
BBO No. 125000
DiMENTO & SULLIVAN
7 Faneuil Marketplace
Boston, MA 02109
617-523-2345