transcript of filipe sentencing.txt

1

```
 1              UNITED STATES DISTRICT COURT FOR
                   THE DISTRICT OF MASSACHUSETTS
 2

 3                                      )
 4   UNITED STATES OF AMERICA,          )
                                        )
 5            Plaintiff,                )
                                        )   Criminal Action
 6                                      )   No. 04-10151-GAO
     vs.                                )
 7                                      )
                                        )
 8   JOSEPH GUCCI FILIPE,               )
                                        )
 9            Defendant.                )
                                        )
10

11                    TRANSCRIPT OF SENTENCING
12

13
            BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
14                 UNITED STATES DISTRICT JUDGE

15

16                   United States District Court
                   John J. Moakley U.S. Courthouse
17                        1 Courthouse Way
                   Boston, Massachusetts  02210
18                        June 9, 2005
                            2:10 p.m.
19

20                   *  *  *  *  *  *

21

22              SHELLY M. KILLIAN, RPR, CM, CRR
                      Official Court Reporter
23              John J. Moakley U.S. Courthouse
                   1 Courthouse Way, Room 3510
24                    Boston, MA  02210
                       (617) 737-7117
25
```

2

```
 1   APPEARANCES:

 2   For the Plaintiff:

 3   Brian T. Kelly
     United States Attorney's Office
 4   John Joseph Moakley Federal Courthouse
     1 Courthouse Way, Suite 9200
```

Page 1

transcript of filipe sentencing.txt

5    Boston, Massachusetts  02210

6    For the Defendant:

7    Francis J. DiMento, Esq.
     DiMento & Sullivan
8    Seven Faneuil Hall Marketplace
     Boston, Massachusetts  02109

9    - and -

10
     Andrew B. Saunders, Esq.
11   Saunders & Michaud
     Fleet Bank Building
12   700 Pleasant Street, 5th Floor
     New Bedford, Massachusetts  02740

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                             3

1                  P R O C E E D I N G S

2                (The following proceedings were held in open court

3    before the Honorable George A. O'Toole, Jr., United States

4    District Judge, United States District Court, District of

5    Massachusetts, at the John J. Moakley United States Courthouse,

6    1 Courthouse Way, Boston, Massachusetts, on June 9, 2005.

7                The defendant, Joseph Gucci Filipe, is present with

8    counsel.  Assistant U.S. Attorney Brian Kelly is present.)

9                THE CLERK:  United States versus Joseph Gucci

                              Page 2

transcript of filipe sentencing.txt
10    Filipe, docket CR 04-10151.  Would counsel please identify

11    yourselves for the record.

12              MR. KELLY:  Good afternoon.  Brian Kelly for the

13    United States.

14              MR. DIMENTO:  Francis Dimento, your Honor, for the

15    defendant, with Andrew Saunders.

16              MR. SAUNDERS:  Good afternoon, your Honor.

17              MR. DIMENTO:  And the defendant is here, of course.

18              THE COURT:  All right.  The defendant appears this

19    afternoon for imposition of sentence on his conviction of one

20    count of perjury in violation of 18 U.S. Code Section 1623, one

21    count of obstruction of justice in violation of 18 U.S. Code

22    Section 1503, those convictions following his entry of a plea

23    of guilty to those two offenses.

24              I have a presentence report prepared by the

25    probation office in the usual form.  I have a document entitled

                                                              4

1    "Government's Submission Re: Presentence Report," and I have

2    defendant's motion for downward departure.  Is there anything

3    else the parties think I should have seen that I haven't just

4    mentioned?

5              MR. DIMENTO:  I think you have a complete record.

6              THE COURT:  I gather the parties have had an

7    opportunity to review the final form of the presentence report

8    as it's been presented.

9              MR. DIMENTO:  Yes, we have.

10              THE COURT:  Is there any issue with respect to the

11    statement of offense conduct as set forth in the presentence

12    report, so that it may serve as a basis for whatever sentencing

13    judgments have to be made?

14              MR. DIMENTO:  There's no issue, your Honor.

                           Page 3

transcript of filipe sentencing.txt
15          THE COURT:  I should note that the defendant's
16  entry of a plea of guilty was not pursuant to a plea
17  agreement.  There is no plea agreement in the case.
18          We're all now well aware, post Booker sentencing
19  decision making is governed principally by the statute, 18
20  U.S.C. Section 3553(a), which sets forth a number of factors to
21  be considered.  One of which is consultation of the sentencing
22  guidelines, regarding them as advisory rather than as mandatory
23  and governing.  As is usual, the presentence report proposes a
24  calculation of the guidelines range which sets it forth, and I
25  can tell from the submissions that the parties are not

5

1   unanimously in agreement with the probation office.  I don't
2   know if anybody wants to be heard particularly on the
3   computation itself or the appropriateness of the calculation as
4   proposed, but if you do want to be heard on that, I'll
5   entertain it.
6          MR. KELLY:  Yes, your Honor, sure.  Well, while the
7   facts of the case are fairly simple, I don't think the
8   guideline of the case necessarily are.  The conviction here is
9   for perjury and obstruction of justice.  So the question
10  becomes what is that perjury and what is that obstruction of
11  justice relative to in terms of the underlying offense as set
12  forth in the guideline 2J1.3.  This is basically a continuation
13  of a discussion I had in this court several months ago with the
14  Jackie Bulger case, where I argued unsuccessfully the
15  implications of the First Circuit case in John Connolly.  The
16  John Connolly opinion by the First Circuit at 341 F.3d 16 makes
17  it clear that a defendant who has committed perjury or
18  obstruction of justice, his subjective knowledge of the
19  underlying offense doesn't matter; that is, it's objectively

Page 4

transcript of filipe sentencing.txt
20    what was the underlying offense.  And that's where the
21    difficulty comes in in this case.
22          The defendant approximately three years ago
23    willfully, knowingly went into the grand jury and lied.  And he
24    lied primarily about the activities of a man named Timothy
25    Mello.  Timothy Mello was being investigated by the grand jury

6

1    along with several of his cohorts for various criminal
2    activities, including racketeering, extortion and so forth.
3    And when questioned in the grand jury, Mr. Filipe lied about
4    the fact that he had paid money to Mr. Mello, that he had in
5    fact been an extortion victim of Mr. Mello.
6          So the question comes up in the application of
7    these guidelines what governs his perjury and his obstruction
8    of justice?  Is it simply the extortion as argued by the
9    defense, which would, as they calculate, go from 18 plus two
10   for implied threat, down six because it's an accessory and down
11   another two for acceptance to total, as they come out with, a
12   12?  I think if extortion is viewed as the underlying offense,
13   their calculation is correct and the guideline range would be
14   12 to 18.  However, the First Circuit case, which admittedly is
15   pre Booker, does suggest that the more serious offense should
16   be looked at; that is, Rico.
17          And the Rico offense that Mello was ultimately
18   indicted for has higher guidelines because not only was he
19   involved in extortion, he was involved in drug trafficking.
20   And the drug trafficking in the case of Mr. Mello drove his
21   guidelines far higher than the extortion did.  Now, there's no
22   evidence in the record to suggest that Mr. Filipe was involved
23   in this drug trafficking, knew about the drug trafficking or
24   had anything to do with the drugs.  But, you know, under this
                              Page 5

transcript of filipe sentencing.txt
25    First Circuit case, the John Connolly case, his subjective

7

1    knowledge is irrelevant.

2             The drugs that Mr. Mello was ultimately convicted

3    of trafficking as part of his Rico conviction would give a much

4    higher guideline range, as the government pointed out in its

5    submission.  I don't think they're as high as probation sets

6    them as because I attached the judgment of conviction by Judge

7    Saris in which she found Mello's total offense level to be a

8    33.  And, therefore, the guideline range I think would be lower

9    than what they're suggesting.  I'm suggesting it would be 57 to

10   71 months under the Connolly opinion.  They're suggesting it

11   would be higher, 78 to 97 months.  I don't think that's

12   accurate.  They make reference to his other colleagues indicted

13   pursuant to this grand jury investigation.  None of them had

14   guidelines higher than Mello.  Mello had the highest

15   guidelines.  So I think the cap would be 57 to 71 months.

16            So what this Court has to determine is what is the

17   actual underlying offense that pertains to his perjury and

18   obstruction of justice, and I think that's the issue for the

19   Court.

20            THE COURT:  Is the government's intention to argue

21   for a sentence within the guideline range, A, if the guidelines

22   range is calculated as the government would calculate it; or B,

23   under any potential calculation of the guideline range; or C,

24   not at all?

25            MR. KELLY:  I'm not sure.  I think I'm thoroughly

8

1    confused.  I think I will wait to see what the Court decides

2    the range is and make my argument then, if that's acceptable to

3    the Court.

Page 6

transcript of filipe sentencing.txt

4          THE COURT:  Fine.

5          MR. DIMENTO:  Your Honor, please, I'm gratified to

6    hear Mr. Kelly call to your attention or remind you of the

7    Bulger case, wherein I believe this Court correctly perceived

8    the injustice of sentencing a man on the basis of facts of

9    which he was completely unaware.  But the Bulger case was pre

10   Booker.  And now that Booker case is the controlling law and

11   was at the time of the sentencing, I fought to take advantage

12   of it.

13          You will recall at the time that Mr. Filipe was

14   sentenced -- was -- pled guilty.  If I had said sentencing, I'm

15   sorry.  At the time of his Rule 11 hearing, the plea was

16   restricted in the sense that he pled guilty only to a perjury

17   and an obstruction before a grand jury that was investigating

18   extortion.  He did not admit that the grand jury was

19   investigating anything more than extortion, nor did a jury find

20   that the grand jury was investigating anything more than

21   extortion.  So that the sentencing enhancing elements, which in

22   this case would be racketeering and dealing in drugs, are

23   not -- are not in this case and should not be considered by the

24   Court, we submit.

25          The probation office and the government assume that

9

1    the plea of guilty was a plea to all the elements defined in

2    the indictment.  That is not so.  The defendant pled guilty to

3    all the elements that constitute the crime, but he did not

4    admit nor did a jury find the sentencing enhancing elements.

5    So, therefore, on two grounds, first of all, citing the

6    precedent of the Bulger case, which your Honor himself was the

7    sentencing judge, and citing the restricted plea that was

8    entered here, I would submit that the correct guideline level

transcript of filipe sentencing.txt

9   to begin with is guideline 12.  Level 12.  Thank you.

10          THE COURT:  The detailed elaboration of what the

11  new sentencing regime is will occur over time as we address

12  each individual case and make appropriate judgments in each

13  case.  I don't propose to have any grand theory that I would

14  seek to impose in each case.  So I try to take the instruction

15  from Booker and apply it to the circumstances of each case.

16          As I currently understand it, subject to

17  development, our obligation is to consult the guidelines

18  seriously and in good faith with a disposition to be persuaded

19  by the advice that the guidelines give.  So it has to be a

20  straightforward, face-up consideration of how the guidelines

21  would operate.  And I think that's separate, then, from the

22  question of having considered the advice of the guidelines,

23  what to use it for and how to blend it with the other factors

24  that the statute requires.

25          So that's another way of saying I don't think that

                                                            10

1   the Booker decision changes the way we should understand the

2   guidelines themselves to operate, though it may change what we

3   do with that result once it's been computed.  For that reason,

4   I agree with the probation office in its proposed computation.

5           The guidelines, using the cross reference mechanism

6   it sets forth for these particular offenses, calls for two or

7   three jumps.  An assessment on a categorical basis rather than

8   a real world basis, as I understand it.  As a general matter.

9   And it does not call for a computation with reference to what

10  may have been another judge's computation in another case.  For

11  that reason I disagree with the government's view that I ought

12  to look at the guideline range as computed by Judge Saris.  I

13  have no information as to what went into Judge Saris's

                            Page 8

transcript of filipe sentencing.txt

14    computation, and I think the guidelines say follow these

15    methods, plug these numbers in, see what the answer is.

16              I don't think the calculation is affected as a

17    guidelines calculation by the defendant's reservation, if

18    that's the right word, regarding what he would admit was the

19    underlying offense at the time of the guilty plea.  Identifying

20    the underlying offense is a guidelines task, not an element of

21    the offense.  It was not necessary to obtain a conviction on

22    the offenses as charged in the indictment for the government to

23    prove what the underlying offense was, nor was it necessary for

24    a defendant in the guilty plea to admit what the underlying

25    offense was.  Under some possible alternate universe of

                                                              11

1     sentencing, it might have mattered what the defendant admitted

2     or what the government would have to prove, but we didn't get

3     to that universe.  And so I don't think the limitation or the

4     reservation that this was agreeing that the underlying offense

5     was extortion has any meaning for the guidelines computation.

6     So I think it has properly been done in the categorical way

7     that the guidelines call for by the probation office as set

8     forth.

9              Having said that, I will tell you that I am not

10    persuaded, although I perhaps could be, but I'm not at this

11    stage persuaded that it is appropriate or just in this case to

12    follow the guidelines range.  Because I think in this case, for

13    a number of reasons, to apply a sentence within the range

14    yielded by this orthodox guidelines computation would not yield

15    a just result given all of the other factors, and it would give

16    a primacy to the guidelines as a factor among several in the

17    statute that I think is inappropriate and is not my instruction

18    under Booker to do.

transcript of filipe sentencing.txt

19          And let me just say briefly why I think the

20    guidelines is out of -- without deciding on the sentence, I'll

21    hear you on the particular sentence -- but let me just say a

22    couple of reasons why I think that the guidelines range or the

23    process by which the guidelines range is calculated as applied

24    to this case yields a result that should not be applied.

25          The cross reference mechanism that the guidelines

                                                            12

1    use for perjury and for obstruction of justice rests

2    ultimately, I think, on the policy judgment that the

3    seriousness of any particular incidence of those offenses can

4    be assessed by considering what the underlying offense was that

5    was the occasion for or the subject of the perjury or the

6    obstruction.  This is, I think, a rather sensible goal in a

7    system of sentencing, and one might even say a system of

8    justice that values highly the principle of proportionality.

9    Perjury in connection with very serious offenses should be

10    punished more severely than perjury in connection with lesser

11    offenses.

12          Now, the policy can be implemented well by the

13    guidelines structure when the reference point, the underlying

14    offense, can be confidently and unambiguously fixed.  But where

15    there is ambiguity or uncertainty what the underlying offense

16    may properly be designated to be, the principle of

17    proportionality may not be well served and, in fact, may be

18    very poorly served.

19          One of the difficulties with the way the guidelines

20    approached the problem, in my judgment, is that it is an

21    attempt to be too all-encompassing and cover any particular

22    instance of perjury or obstruction.  But those crimes can occur

23    in significantly different contexts, and the context may matter

Page 10

transcript of filipe sentencing.txt

24    very much for purposes of deciding what the underlying offense

25    is and where that reference point should be fixed.


                                                                    13

1             For example, when perjury is committed before a

2     petit jury in a criminal trial, it is relatively easy to

3     determine what the underlying offense is because it is defined

4     by the indictment being tried.  Perjury before a grand jury is

5     different.  There is no similar definition of an underlying

6     offense.  In fact, depending on when in the life of the grand

7     jury the perjury occurs, there may be shifting understandings

8     about what the grand jury is concerned with.  The grand jury's

9     interest may be wide and far ranging, although any particular

10    witness's testimony may concern only a very limited area.  And

11    I think this is particularly true in a Rico case.  A witness

12    may be called to give testimony, for example, about a

13    particular potential predicate offense at some given level of

14    seriousness, but the alleged Rico enterprise or the one being

15    proposed and investigated may have, in fact, involved far more

16    serious offenses than the one the witness is called to testify

17    about.  Defining as the guidelines do the underlying offense as

18    the greatest that the grand jury was considering may involve

19    using a reference point that is, as a matter of historical fact

20    with respect to that witness, completely unrelated to whatever

21    connection the witness may have had with the enterprise.  And

22    it seems in such a case that the principle of proportionality

23    is very poorly served by scaling the punishment of the perjurer

24    to the events he neither had any connection with or gave

25    specific testimony about.


                                                                    14

1             Now, I recognize the Connolly case has had

transcript of filipe sentencing.txt

2   something to say on this subject and rather -- I think we've

3   had this discussion -- curtly disposed of the argument in that

4   case that the perjurer's subjective knowledge of the underlying

5   offense mattered.  I do note that the issue is addressed in a

6   context that did not involve testimony before a grand jury.  In

7   the Connolly case there was an indictment, and the charge was

8   that he had obstructed a prosecution of an existing

9   indictment.  And that's more similar to the first case that I

10   proposed, trial before a petit jury, than it is to the second

11   case, testimony before a grand jury where the subject matter is

12   broader, more diffuse and less well defined.  So I think you

13   could read the Connolly case as not foreclosing the point that

14   I'm making.

15        But my point is actually a little bit different

16   anyway because I've already said that I accept the computation

17   of the guidelines in the orthodox fashion, which is what the

18   pre Booker Connolly case was addressing.  My point is slightly

19   different, and that is what am I to do now with the advice from

20   the guidelines when I am faced with a situation of applying the

21   facts of this case, as they are presented, to the factors that

22   are called for in the statute.  And for that purpose, I think

23   it is appropriate to consider the particular circumstances --

24   this is the first factor in the statute -- particular

25   circumstances of the offense, which include what it was that

                                                 15

1   was the subject of the particular false testimony and

2   obstruction that forms the basis of these convictions.

3        So I am disposed to impose a sentence that is, I

4   think the term that is increasingly being used, is a

5   nonguideline sentence.  That is, a sentence guided by the

6   several factors in the statute, one of which is the advice of

transcript of filipe sentencing.txt

7   the guidelines.  And for that, then, I'd entertain a particular

8   sentencing recommendations from counsel and from the defendant,

9   if he wishes, before I decide what the sentence should be.

10          MR. KELLY:  All right then.  In light of the

11  Court's ruling and findings, I would suggest the following:

12  First of all, as I indicated at the outset, the facts of this

13  case are not in dispute.  The defendant willfully, knowingly

14  committed perjury before that grand jury several years ago.

15  It's a crime which strikes at the very heart of the criminal

16  justice system.  If people can't be counted on to testify

17  truthfully in a grand jury or later at trial, cases can't be

18  made, innocent people can't be cleared, guilty people can't be

19  convicted.  So the nature of the crime itself is a serious one

20  and is one that needs to be punished.  In fact, one of factors

21  in 3553 is that the Court in fashioning a sentence must promote

22  respect for the law.  And the Court must sentence somebody who

23  is convicted of perjury to a significant sentence.

24          In this case, the defense has submitted various

25  arguments about duress, but I would submit that those arguments

                                                            16

1   lack merit.  In any case where someone's called before a grand

2   jury to be questioned about what crime they're aware of and

3   what crime they may have been victimized by, there's always an

4   element of concern about the perpetrator.  But these crimes

5   can't be solved if the people can use duress or being afraid as

6   an excuse to lie.  So that's not a basis to reward him with

7   probation as the defense is arguing.

8           His medical condition, they're legitimate and

9   they're real and they should be one factor that the Court

10  considers.  But, again, probation is not an appropriate

11  sentence in this case.

                        Page 13

transcript of filipe sentencing.txt

12    If the Court wants to think about this principle of

13    proportionality, the Court should bear in mind that this is not

14    the only defendant who was indicted and convicted of perjury

15    during the course of the Mello grand jury investigation.  There

16    was a Fall River police officer named Barry Pacheco who also

17    appeared before the same grand jury, he was indicted and

18    convicted for perjury, obstruction of justice, again, false

19    testimony before the same grand jury.  He ultimately received a

20    sentence of 15 months in custody.  And compared to that

21    defendant, you know, I would concede that he is certainly no

22    worse than the Fall River police officer who appeared before

23    the grand jury and lied.

24    So I would submit to the Court that the defendant

25    should get a 12-month sentence.  It's a significant sentence,

17

1    it reflects the seriousness of the crime, it reflects the fact

2    that some respect for the law must be imposed here, and I think

3    in proportion to the other person convicted in this grand jury

4    investigation of perjury, it's fair.  And I don't think a

5    sentence of probation would be fair or make sense or be just or

6    reflect any seriousness for the underlying crime, the crime of

7    perjury, which the end of the day strikes at the very heart of

8    our system and shouldn't be tolerated.

9    THE COURT:  Mr. Dimento.

10    MR. DIMENTO:  If your Honor, please.  I've

11    submitted a -- what I denominated as a motion for a downward

12    departure in which I itemized three of the four grounds for a

13    downward departure, which in this context now that we're

14    dealing with, a nonguidelines, as you put it, sentencing

15    structure, is still available to me, I would think, and in

16    arguing now sentencing.

Page 14

transcript of filipe sentencing.txt

17          I certainly can understand how a police officer who

18     lies is deserving of 15 months.  Police officers are not people

19     against whom criminals take retribution normally; and when they

20     do, to use the vernacular, there's all hell to pay and

21     criminals know it.  But in this case, this person Timothy Mello

22     was widely publicized by the government as being an extremely,

23     extremely dangerous person.  They were able to successfully --

24     to win a detention order.  And when he was indicted, he

25     remained in jail for almost a year until he entered into a plea

                                                                    18

1     agreement.

2          What went on in Mr. Filipe's mind I think is what

3     is more important than what the facts are.  The truth is that

4     as far back as 1990 there were newspaper articles about

5     Mr. Mello being interdicted on a planned murder.  Mr. Filipe

6     knows of stories in the whole area, everybody in southeastern

7     stories knows of where Mr. Mello was reputed to have hurled a

8     man in a wheelchair down the stairs.  In this particular case

9     he threw a television set at Mr. Filipe.  He, if you just read

10     the grand jury -- the grand jury indictment about Mr. Filipe,

11     there are several acts of violence, beating up people who

12     crossed him.  We here in Boston, although we don't usually

13     follow stories in southeastern Massachusetts, were treated to

14     all kinds of terrible, terrible stories about Mello during the

15     investigation because the United States Attorney's Office made

16     it a point that the public should know what kind of a man this

17     is.  So that you have to, I would think, consider that

18     background when Mr. Filipe entered that grand jury thinking

19     that not only was his life in danger but his children.  He had

20     a 2-month-old child and two other children, ages around 3 and 5

21     at the time, and a couple of teen-agers that were not his own

                                 Page 15

transcript of filipe sentencing.txt

22   children but who had lived with him and his wife since their

23   very early childhood.  He had to think of them, too.

24          Now everybody knows, we know in this courtroom,

25   that there are better ways to do this, and one of them is to


                                                              19

1    seek protection in the witness protection program, which -- and

2    that may be the only way available.  Mr. -- it's a hard choice

3    under any circumstances.  I don't think a police officer has to

4    worry about a choice like that but Mr. Filipe did.  And he

5    chose the wrong way out.  There's no question about that and

6    he's admitted it.  If we try to put ourselves in that position,

7    any one of us might think, well, at least we can understand it,

8    even if we didn't do it ourselves.

9          In this case, as you know, the guideline does say

10   that duress is an encouraged ground for a departure.  And also

11   the First Circuit in the case of United States v. Winter, where

12   there wasn't perjury but a refusal to testify at all has held

13   that the proper way to handle it is in mitigating the

14   sentence.  Indeed I'm reading the quote.  "A reticent witness's

15   fear for personal safety is potentially relevant only in

16   sentence mitigation."  And that's United States v. Winters 70

17   F.3d at -- which is page 655 at page 666.  So I don't think

18   that the government can honestly argue, and I don't think they

19   have or would argue, that Mello was an extremely, extremely

20   dangerous enemy.  And there were charges in the indictment that

21   he threatened people to deter them from testifying, so that he

22   was capable of anything.

23          Going to his health, your Honor, his probation

24   report, the presentence report, has very nicely summarized it

25   and done it accurately.  The man has, for all practical

                                                              20

transcript of filipe sentencing.txt

1    purposes, one kidney and that is failing.  He will eventually
2    be on dialysis.  He's only in his 30s, late 30s and he's had
3    already two heart attacks.  So he has to be very closely
4    monitored.  Right now he's getting the very highest standard of
5    medical treatment.  And I know you've heard and I've heard in
6    this courtroom hundreds of times how the federal government,
7    the Bureau of Prisons, is well able to provide adequate medical
8    services to those who need it -- who need them.  But in this
9    case, I don't think or I think the Court should consider that
10   if Mr. Filipe is going to be reduced from medical services that
11   are -- at the top of the standard down to medical services that
12   are merely adequate, he's going to lose the function of that
13   kidney much sooner.  So I think that we are really jeopardizing
14   very seriously his health, even given and even assuming that he
15   will have adequate medical.
16          On the question of the family situation, I have
17   noticed that there is a reporter from southeastern
18   Massachusetts here, and I don't want to make public and speak
19   publicly of that family situation.  It is in the pleading.  And
20   it would be -- the children, especially the eldest, the boy who
21   is going to be 8 in July, clings very closely to Mr. Filipe and
22   if he were now to lose his father as well as his absent mother,
23   it would be a disaster.
24          So and finally I did point out that there were only
25   two misdemeanor offenses, and they fall exactly into the

                                                              21

1    example given in the guideline as an example of a reason for
2    downward departure.  So I believe if we take a police officer
3    given 15 months as a starting point, that we have here a case
4    of probation, your Honor.  Thank you.
5          THE COURT:  Mr. Filipe, you have the opportunity to
                            Page 17

transcript of filipe sentencing.txt

6    make a statement before I decide on a sentence to impose.  You

7    don't have to if you don't wish to, but this is your

8    opportunity to do so if you wish.

9              THE DEFENDANT:  Your Honor, I'm a little bit too

10   nervous to make a statement at this point.  Thank you.

11             THE COURT:  Let me address some of the factors that

12   are enumerated in the statute.  I've already addressed the

13   guidelines factor and indicated why I think it does not provide

14   helpful guidance in this case for a sentence.

15             Let me pair two of the factors which are separately

16   stated because I think they can be -- they're sort of topically

17   related.  That is, the nature and circumstances of the offense

18   and the need for the sentence imposed to reflect the

19   seriousness of the offense, promote respect for the law,

20   provide just punishment, afford adequate deterrence and protect

21   the public from further crimes by the defendant.

22             There's no doubt, as Mr. Kelly points out, that

23   perjury and obstruction of justice are serious offenses.  No

24   one sitting in this chair could think otherwise.  And it is

25   necessary when these offenses are prosecuted to be clear that

                                                              22

1    perjury and obstruction of justice are threats to the

2    foundation of the legal order.  And in no sense and in no case

3    are they trivial events.  This recognition is tied to the goal

4    of general deterrence; that is, signaling to potential future

5    offenders -- future offenders other than this defendant -- that

6    such offenses merit serious, though not necessarily uniform

7    punishment.

8              In the circumstance of this case, a specific

9    deterrence also calls for a sentence that sufficiently

10   dissuades this defendant from any thought that perhaps he's

                          Page 18

transcript of filipe sentencing.txt

11    gotten away with something, weakening his resolve perhaps

12    should the occasion re-present itself.

13              Another factor -- well, further on those factors I

14    think that the consideration of the circumstances of this

15    offense also requires acknowledgment that the false testimony

16    was about money extorted from the defendant under the threat of

17    physical harm.  To the extent there's any controversy or doubt

18    about that proposition, I find it as a fact.

19              I'd also note that the scope and extent of the

20    perjury in this case was relatively limited.  That is, this was

21    not extensive testimony and it was not wide ranging in its

22    subject matter or scope.

23              Another factor that bears consideration is the

24    history and characteristics of the defendant.  The defendant is

25    not a first offender.  He has a short but not insubstantial

                                                              23

1    criminal history, and I think that a nonguideline sentence

2    should take account of this in a manner similar to the way the

3    guidelines would account for it; that is, in the guidelines

4    case by moving the defendant over a category in the criminal

5    history axis of the sentencing table.

6              Some of the factors are not particularly pertinent,

7    such as policy statements by the guidelines or the kinds of

8    sentences that are available.  I do note that there's, I think

9    under the circumstances as they present at this stage having

10    decided not to follow the guidelines as a mandate, that there

11    is a wide range of possibilities of sentencing that could be

12    imposed.

13              The final factor in -- that I think does merit

14    consideration in this case is the need to avoid unwarranted

15    sentencing disparities among defendants with similar records

transcript of filipe sentencing.txt

16    who have been found guilty of similar conduct.  Ordinarily we

17    can trust the guidelines to have an important role in this

18    factor, but for the reasons I've already discussed, I don't

19    think they do that in this case.  So I resort to other

20    considerations.  Some is -- to some extent I recall

21    dispositions in other cases that I've had involving these

22    offenses.  I take account of what Mr. Kelly points out is a

23    similar circumstance with respect to the Melo investigation,

24    although it's not possible to refine the comparison on the

25    limited information that I have.

24

1         I also take note of the prosecutions in the Melo

2    indictment itself before Judge Saris.  And I note I have read

3    the judgments in that case.  I have not read the presentence

4    reports and so this is a very rough assessment, but I do note a

5    couple of things that I think are worth taking account of.  One

6    was that Melo himself was given a reduced sentence at the

7    request of the government for his cooperation, which included

8    his assistance in proving that this defendant had lied to the

9    grand jury.  And the other thing I note is that other

10    defendants in that case, presumably less culpable than Melo

11    apparently, using my reason and experience in reading the

12    documents, reached agreements with the government that led to

13    the dismissal of some serious charges in exchange for a plea on

14    some lesser charges and, in fact, then received probationary

15    terms.

16         There's no precise way to fit the factors

17    together.  Some of the factors pull in different directions.

18    This is where -- this is a very good illustration, I think, of

19    a case where attempts to mechanize the process of judgment or

20    perhaps, to put it more softly, routinize it, regularize it,

Page 20

transcript of filipe sentencing.txt

21  are unsatisfactory.  And I say this not as a personal statement

22  but as an official one that sometimes there is simply no

23  substitute for prudent, careful judgment about what ought to be

24  done.

25          I think in this case a sentence of a short period

                                                        25

1  of incarceration would be warranted, but I will prescind from

2  it for the family reasons.  I'm persuaded -- in every case --

3  we see this frequently -- there are collateral victims, and in

4  many cases there's nothing we can do about it.  But I think a

5  just sentence can be fashioned that will not be too light or

6  too forgiving but that can also avoid the collateral harm that

7  might otherwise be done.  So I think a period of probation with

8  a period of home confinement is the solution, coupled with a

9  monetary fine.

10          So, Mr. Filipe, if you'd stand, please.  Upon your

11  conviction of these offenses it is the judgment of the Court

12  that you be and you hereby are placed on probation for a term

13  of three years.  This consists of equal terms of three years on

14  each of the counts of conviction, to be served concurrently.  I

15  further order that you pay a fine of $3,000 on each count for a

16  total of $6,000 in fines.  The fine is to be paid immediately

17  or according to a schedule that can either be agreed upon

18  between you and the probation officer or, in the absence of an

19  agreement, can be ordered by the Court after hearing.  The

20  fine -- I've said enough about the fine.

21          You shall notify the U.S. Attorney of this district

22  court within 30 days of any change of your mailing or

23  residential address that occurs while any portion of the fine

24  remains unpaid.  It will be a condition of your probation that

25  you spend the first 12 months in home confinement with

transcript of filipe sentencing.txt

26

1    electronic monitoring.  You shall be required to contribute to

2    the cost of the electronic monitoring on the standard fee

3    schedule.

4              While you are on probation, you shall not commit

5    any other federal, state, or local crime.  You shall refrain

6    from the unlawful use of any controlled substance.  If the

7    probation report indicates no history of substance abuse, on

8    recommendation of the probation officer, I will dispense with

9    the drug testing conditions, unless some cause appears to

10   impose them.  The defendant shall submit to collection of a DNA

11   sample as directed by the probation office.

12             You shall also comply with all the standard

13   conditions pertaining to probation that are set forth in the

14   Sentencing Guidelines at Section 5B1.3(c).  Although this is

15   not a guideline sentence, I incorporate those conditions as

16   conditions of your probation.

17             In addition, you shall comply with the following

18   special conditions:  You are prohibited from possessing a

19   firearm or other dangerous weapon.  It is a condition of your

20   probation that you pay the balance of the fine if it's paid

21   according to a schedule.  A default in that respect could

22   result in the revocation of your probation.  You are prohibited

23   from incurring new credit charges or opening additional lines

24   of credit while any portion of the fine remains unpaid, unless

25   you have the approval of your probation officer.  You are to

27

1    provide the probation office with access to any requested

2    financial information.  That information may be shared by the

3    probation office with the U.S. Attorney's financial litigation

transcript of filipe sentencing.txt

4   unit.

5          Finally, there is a mandatory special assessment on

6   each count of $100 for a total of $200, which is due forthwith.

7          THE CLERK:  Mr. Joseph Gucci Filipe, you have the

8   right to file a notice of appeal in this case.  If you do wish

9   to file an appeal, you must file it within ten days from the

10  date the judgment is entered.  If you cannot afford an attorney

11  to file the appeal on your behalf, you may request the clerk of

12  the court to file it for you and I will do so.  Do you

13  understand, sir?

14         THE DEFENDANT:  Yes, I do.

15         MR. DIMENTO:  May I have a moment, your Honor,

16  please.

17         (Counsel conferred with defendant.)

18         MR. DIMENTO:  Your Honor, please, could we -- may I

19  suggest this, that the fine be payable in three months without

20  interest in full?

21         THE COURT:  Fine.

22         MR. DIMENTO:  He can do that.

23         THE COURT:  Yes, that's fine.

24         MR. DIMENTO:  One other request, your Honor.  That

25  he be permitted to travel freely back and forth between Rhode

                                                            28

1   Island.  He brings the children sometimes.

2          PROBATION OFFICER:  I think that that would have to

3   be something that would be discussed with the supervising

4   probation officer.

5          THE COURT:  It will have to interface with the home

6   confinement.  His travel will be limited, there's no question.

7          MR. DIMENTO:  Yes, of course.

8          THE COURT:  But there are exceptions.  For example,

transcript of filipe sentencing.txt

9    for employment reasons and so on.  So there is a template which

10   the probation office uses, and we'll leave it to that.

11              MR. DIMENTO:  We'll try to work it out with

12   probation, your Honor.  Thank you.

13              THE COURT:  We'll take a short recess.

14              THE CLERK:  All rise.  Court will take a short

15   recess.

16              (Adjourned 2:50 p.m.)

17                   - - - - - - -

18                   CERTIFICATION

19        I certify that the foregoing is a correct

20   transcript of the record of proceedings in the above-entitled

21   matter to the best of my skill and ability.

22

23   _____    _____

24   Shelly M. Killian                   Date

25   Official Court Reporter